CLEARY GOTTLIEB STEEN & HAMILTON LLP

NEW YORK

VIA ECF                                        April 17, 2026

Hon. Katherine Polk Failla
United States District Judge, Southern District of New York
40 Foley Square, Room 2103, New York, NY 10007

Re: Federal Trade Commission v. Henkel AG & Co. KGaA, et al., No. 1:25-cv-10371-KPF

Dear Judge Failla:

We write on behalf of Defendants to respectfully request that the Court review an issue of confidentiality relating to discovery provided by third-party subpoena recipient Menard, Inc. At Menard's request, during discovery, Defendants had agreed in a March 18, 2026 Stipulation (Ex. A) that information designated by Menard as Select Attorneys Eyes Only ("SAEO") would be restricted to a subset of Defendants' litigation teams. This goes far beyond the restrictions for Confidential materials under the December 23, 2025 Protective Order (ECF No. 59).

Menard is a United States retailer selling construction adhesives, and both the FTC and Defendants issued subpoenas to Menard seeking relevant documents and testimony. In responding to those subpoenas, Menard asserted that some of the responsive materials were so competitively sensitive that the Protective Order—which restricts distribution to outside counsel—was insufficient. Of the more than two dozen third parties who received subpoenas in this case, only Menard insisted on further restrictions. Despite repeated efforts to resolve the issue, two days before the deposition of Menard's witness, Menard insisted that it would produce key materials only if the parties agreed to further limit distribution to a handful of outside counsel and to exclude experts.[1]

The parties agreed, but reserved the right to ask the Court for review later. Ex. A ¶ 7. This avoided the need to delay discovery midstream while the Court received submissions and addressed the issue. Having now reached the end of discovery and shifted to preparing expert materials and getting ready for trial, Defendants need Court review to avoid the burdens of having to segregate information among trial team members and keep their expert in the dark about relevant evidence.[2]

There is no basis to restrict distribution beyond what the Protective Order allows and Menard's requested limitations impair Defendants' right of defense. Menard has not met its burden to show these special treatments are merited but continues to insist that the Protective Order is insufficient, despite being unable to identify a single case supporting its position.

---

[1] Defendants engaged in extensive discussion with Menard's counsel in an effort to resolve its concerns, including meeting and conferring on February 27, March 10, March 13, and March 17.

[2] By letter, Defendants requested Menard's counsel reclassify its documents and testimony on April 10, 2026 (Ex. B). Menard declined to do so in an April 14 letter (Ex. C). Defendants met and conferred with Menard's counsel by phone on April 17, 2026, but were unable to reach agreement.

The relevance of information from third-party customers like Menard is not in dispute.[3] The FTC seeks to block Henkel's acquisition of A-Paint, alleging it will substantially lessen competition in "construction adhesives sold in the retail channel." Compl. ¶ 28, ECF No. 1. Information on how Menard evaluates vendors, assesses competitive alternatives, and manages its shelf space is relevant to the competitive dynamics and economic analysis of construction adhesives sales.

As of the March 17 meet and confer, and less than two days before Mr. Schneider's deposition, Menard had still not produced many responsive documents. To enable the deposition to proceed as scheduled, and in an effort to accommodate Menard's unique concerns, Defendants agreed to enter into the Stipulation. The Stipulation permits Menard to designate documents and testimony as SAEO if they "require" special treatment beyond that provided by the Protective Order because of "particularly sensitive trade secrets" or other nonpublic information. Ex. A ¶ 5. SAEO materials can be shared only with a subset of Defendants' trial teams, and not at all with expert witnesses.

None of the documents or testimony excerpts designated SAEO by Menard satisfy the standard set forth in the Stipulation. For example, Menard designated several documents created by Defendants themselves. Other designations involve dated information. Others contain relevant information about third parties' construction adhesives and proposals that neither those third parties nor other resellers who deal with them thought required special treatment. These materials are already disclosed to some members of the Defendants' outside counsel teams. There is no reason they cannot be disclosed to other outside counsel and their experts, all of whom are professionals accustomed to operating under protective orders in antitrust cases.

Defendants informed Menard of the deficiencies in its position by letter dated April 10, a day after Menard produced additional responsive documents. *See* Ex. B. Menard responded by letter dated April 14 and argued that its SAEO designations are appropriate because it is a non-party (Ex. C at 1); this is true of all third parties responding to subpoenas, and is insufficient to satisfy the SAEO standard that the extraordinary limitations are "required." Menard also argued that documents and testimony that "bear directly on how Menard evaluates vendors, structures negotiations, manages shelf space, and assess competitive alternatives" require extraordinary protection, but did not cite any authority supporting that position nor explain what unacceptable risks it would be exposed to were its documents accessible to Defendants' full trial team and economic experts. Ex. C at 2.

Unable to identify any case finding a basis to prevent expert economists or outside counsel from viewing sensitive documents, much less the kinds of ordinary confidential materials designated by Menard, Menard relied instead on inapposite cases that stand for the unremarkable and irrelevant proposition that non-parties are afforded greater protections than parties in discovery and that involve different issues than are present here. *See Meta v. Target Corp*, No. 15-mc-050, 2015 U.S. Dist. LEXIS 158720, at *4 (E.D. Wis. Nov. 24, 2015) (rejecting overly broad subpoena to party's direct competitor that court felt was targeted toward future claims); *In re Subpoenas to Wis Energy Corp.,* No. 10-mc-7, 2010 U.S. Dist. LEXIS 16663, at *2 (E.D. Wis. Feb. 24, 2010) (rejecting overly broad, cumulative subpoena); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (quashing motion to compel against academic researchers, invoking First Amendment protections for interview materials); *Patterson v. Burge*, No. 03-cv-4433, 2005 WL 434240, at *1

---

[3] Because the information is relevant and reclassifying is not burdensome, Menard's cited cases discussing burden are inapposite.

(N.D. Ill. Jan 6, 2005) (quashing subpoena issued to news organization, invoking the public's interest in independent media and editorial integrity).

Menard also cited cases for the notion that "heightened access restrictions are appropriate where disclosure creates a meaningful risk of competitive harm." Ex C at 1. None supports that proposition, but rather confirm that the extreme restrictions Menard seeks are inappropriate. The first vacated an order denying in-house counsel access to confidential information because that counsel was not involved in competitive decision making, thus granting broader access rights than does the Protective Order in this litigation. *U.S. Steel Corp. v. U.S.,* 730 F.2d 1465, 1468–69 (Fed. Cir. 1984). In the second and third, the courts upheld protective orders that provided the same level of protection granted by the Protective Order here. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (upholding protective orders that prevented in-house counsel from receiving trade secret information); *Snap-On Inc v. Hunter Eng'g Co.*, 29 F. Supp. 2d 965, 971 (E.D. Wis. 1998) (prohibiting in-house disclosure in dispute "between business competitors").

Contrary to Menard's position, courts have repeatedly found that protective orders limiting distribution to outside counsel and experts offer adequate protection. *See*, *e.g., Radio Music License Comm., Inc. v. Broad. Music, Inc.,* 348 F.R.D. 187, 191 (S.D.N.Y. 2025) (finding an "OCO designation provides adequate protection" for pricing information produced by nonparty); *In re Subpoena Duces Tecum*, No. MA-85, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997), modified, No. M8-85, 1997 WL 16747 (S.D.N.Y. Jan. 17, 1997) (directing nonparty produce documents under protective order allowing access to in-house and outside counsel and experts involved in the litigation); *BLST v. Atalaya,* LP, No. 24-MC-66 (GHW) (RWL), 2024 WL 2279195, at *5–6 (S.D.N.Y. Mar. 12, 2024) (requiring non-party to produce sensitive information to petitioner's economic experts under a protective order). This is true for the same kind of competitive information sought from Menard. *See, e.g.*, *Orwasher v. Orwasher, Inc.*, No. 09-cv-1081, 2010 WL 2017254, at *2, 4 (May 20, 2010 S.D.N.Y.) (reclassifying documents that "go to the heart of the plaintiff's claims" from highly confidential designation to confidential under protective order); *Excellus Health Plan, Inc. v. Tran*, 222 F.R.D. 72, 73 (W.D.N.Y. 2004) (ordering non-party to produce documents concerning payment formulas, cost comparisons, "business strategies and operation"). Menard offers no basis to question the professionalism of outside counsel and experts here, and indeed, this Court recently affirmed that it "has no doubt that counsel [in this case] will respect and safeguard any data shared with them under the Protective Order[]." Dkt. 118 at 5.

In sum, Menard's documents and testimony are relevant and adequately protected by the Protective Order, through which they can safely be shared with all outside counsel and experts. Menard has not and cannot demonstrate a need for extraordinary restrictions to be applied here. Accordingly, Defendants respectfully request an informal conference with the Court regarding this issue.

Respectfully submitted,

*/s/ Lina Bensman*
*Counsel for Henkel Defendants*

cc:    All counsel of record (via ECF)
       Joseph M. Sanders, Hinshaw & Culbertson LLP