## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

HENKEL AG & CO. KGAA,

HENKEL OF AMERICA, INC.,

HENKEL US OPERATIONS CORP.,

AIP, LLC d/b/a AMERICAN INDUSTRIAL

PARTNERS,

A-PAINT HOLDING LP,

        and

A-PAINT TOPCO, INC.,

        Defendants.

**PUBLIC VERSION**

Case No. 1:25-cv-10371-KPF

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXCLUDE TESTIMONY OF DR. ELIZABETH BAILEY**

**TABLE OF CONTENTS**

I.    Background ................................................................................................................. 2

II.   Legal Standard ......................................................................................................... 6

III.  Argument .................................................................................................................. 7

    A.    Dr. Bailey's opinion that ██████████████████████ should be excluded

       because it relies primarily on ███████████████████████████████

       ███████████ ....................................................................................................... 7

    B.    Dr. Bailey's opinions ███████ should be excluded because they fail to address the

       relevant inquiry. ...................................................................................................... 15

IV.   Conclusion .............................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Alberta Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235 (3d Cir. 1987) ..... 10

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) .................................... 9

*Argus, Inc. v. Eastman Kodak Co.*, 612 F. Supp. 904 (S.D.N.Y. 1985) ...................................... 10

*Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222 (N.D. Ala. 2000),

   *aff'd*, 284 F.3d 1237 (11th Cir. 2002) ...................................................................................... 16

*Boucher v. US Suzuki Motor Corp.*, 73 F. 3d 18 (2d Cir. 1996) ...................................................... 9

*Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc.*, 21-cv-4855 (KPF),

   2024 WL 522751 (S.D.N.Y. Feb. 9, 2024) ................................................................................ 6

*Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410 (5th Cir. 2008) ...................................... 10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .................................................... 7, 14

*FTC v. Hackensack Meridian Health, Inc.*, No. 20-cv-18140,

   2021 WL 4145062 (D.N.J. Aug. 4, 2021) ............................................................................... 10

*FTC v. IQVIA Holdings, Inc.*, 710 F. Supp. 3d 329 (S.D.N.Y. 2024) .................................... 15, 16

*FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27 (D.D.C. 2018) ............................... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB),

   2022 WL 15053250 (E.D.N.Y. Oct. 26, 2022) ....................................................................... 16

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................... 7

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) .................................................... 6

*New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179 (S.D.N.Y. 2020) ................................ 15

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ....................................... 11

*Spectrum Dynamics Med. Ltd. v. GE Healthcare Techs.,* Inc., 18-cv-11386,

    2026 WL 926689 (S.D.N.Y. Apr. 6, 2026)................................................................ 10

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, 95 Civ. 8136 (RCC),

    2001 WL 1602976 (S.D.N.Y. Dec. 14, 2001) ........................................................... 9

*Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL),

    2022 WL 2757643 (S.D.N.Y. July 14, 2022) ........................................................... 7

*United States v. Aetna Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017) ..................................... 10

*United States v. Bazaarvoice, Inc.*, No. 13-cv-00133,

    2014 WL 203966 (N.D. Cal. Jan. 8, 2014) .............................................................. 10

*United States v. Gen. Dynamics Corp.*, 415 U.S. 486 (1974)........................................ 10

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ..................................................... 6

**Other Authorities**

Merger Guidelines § 2.4.C.............................................................................................. 15

**Rules**

Federal Rule of Evidence 702............................................................................... *passim*

Federal Rule of Evidence 703 ...................................................................................... 6, 16

Defendants propose to combine America's runaway, top-two construction adhesives brands sold at retail: Loctite and Liquid Nails. In support, Defendants proffer Dr. Elizabeth Bailey's opinions that ███████████████████████████████████████ ███████████████████████████████████████. But this is a case with mountains of qualitative and quantitative evidence – *real* evidence, ██████████████ – that squarely point to logical conclusions: ███████████████████████████████ ███████████████████████ Defendants, who combine for ██████ market share[1] and have dominated the market for decades. They are, by their own accounts, each other's chief competition.

This is where Dr. Bailey comes in. The only way out of Defendants' antitrust conundrum is to contend that ████████████████████████████████████████ ████████████████████████████████████████████. And the primary evidence – indeed, the backbone of Dr. Bailey's economic theory – in support of that contention is ██████████████████████████████████. What is more, ██████████ ████████████████████████████████████████████████████ ██████████████████████████████

Accordingly, Plaintiff Federal Trade Commission ("FTC") moves to exclude two of Dr. Bailey's opinions: (i) ██████████████████████████████████████ █████████████████████████[2] and relatedly that ████████████████████████ ████████████████████████████;[3] and (ii) ██████████████████████████████

---

[1] Epner Dec. Ex. C ("Luppino Expert Report") at 94, Table 10.

[2] *See* Epner Dec. Ex. A ("Bailey Rep.") at ¶¶ 93-97, 99-102, 109-110, and 112-122.

[3] *See* Bailey Rep. at ¶ 109.

████████████████.[4] These intertwined opinions serve the same underlying purpose: attempting to side-step qualitative and quantitative evidence that the Defendants have long enjoyed a durable market share well above ███ in the market for construction adhesive cartridges sold through the retail channel in the United States.

## I.    Background

Construction adhesives are designed to bond various materials, including drywall, molding, trim, paneling, and subfloors, in home improvement projects and residential and light commercial construction.[5] General contractors, residential remodelers, and do-it-yourselfers ("DIYers") are the main users of construction adhesives like Loctite and Liquid Nails.[6] Indeed, when it comes to construction adhesives, Henkel AG & Co. KgAA, Henkel of America, Inc., and Henkel US Operations Corp (together, "Henkel" or "Loctite"), and AIP, LLC, A-Paint Holding LP, and A-Paint Topco, Inc. (together, "A-Paint" or "Liquid Nails") (collectively, "Defendants") are each other's closest competitors.[7]

---

[4] *See* Bailey Rep. § 3.4.

[5] Epner Dec. Ex. D ("███████████") at 023; Epner Dec. Ex. E ("██████████████████") at 76:5-19; Epner Dec. Ex. F ("████████████") at 24:21-25:8 (construction adhesives offer strong bonding for holding a drywall to a panel or a subfloor down); Epner Dec. Ex. G ("█████████") at 026 (████████████████).

[6] *E.g.*, Epner Dec. Ex. H ("█████████") at 045 (████████████████████).

[7] *E.g.*, Epner Dec. Ex. I ("█████████") at 001 (████████████████); Epner Dec. Ex. J at 014 ██████"); Epner Dec. Ex. K ████████) at 028 (████████████); Epner Dec. Ex. L ██████████ at 001 ████████).

Henkel's Loctite has long been one of the dominant brands in construction adhesives in the United States[8] and is now ███████████████████████[9] Liquid Nails, an ████ ██████████████████████████████████[10] is #2.[11] Loctite documents acknowledge that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████[12]

And Liquid Nails sees itself ████████████████████████████████████ ████████████████[13]

Loctite and Liquid Nails both offer a full suite of construction adhesives ██████ ██████████████████████████████[14] And, as the brands that consumers want, Loctite and Liquid Nails are the brands that dominate shelf space at the biggest home centers, like The Home Depot, Lowe's, and Menards.

---

[8] *See* Epner Dec. Ex. M ████████████████ at 008 (Loctite, OSI, and sister brand Loctite PL combined for ████████████████); Epner Dec. Ex. N ████████████ at 029 (Henkel has ████████ ████████); Epner Dec. Ex. O ████████████ at 039 (Loctite with ████████ ████████), *id.* at 006 (████████████████), Epner Dec. Ex. P ████████████ ████████████) at 002 (2024: ████████████████████████████).

[9] Epner Dec. Ex. Q ████████████ at 094.

[10] Epner Dec. Ex. R ████████████ at 009, 010; Epner Dec. Ex. S ████████████ at 025.

[11] Epner Dec. Ex. T ████████████ at 003; Epner Dec. Ex. U ████████████ at 107:13-108:21.

[12] ████████ at 010.

[13] ████████ at 025.

[14] Epner Dec. Ex. V ████████ at 037; Epner Dec. Ex. W ████████████ 39:9-40:2; 40:6-23; 41:3-6; Epner Dec. Ex. X ████████████ at 008-10. Henkel's offering includes Loctite PowerGrab and Loctite PL. Epner Dec. Ex. Y ████████████ at 5:20-6:4. Liquid Nails' offering includes the eponymous Liquid Nailes Heavy Duty, Quik Grip, and Fuze*It Max. Epner Dec. Ex. Z ████████████ at 003 ████████████

3

Against this backdrop, Defendants seek to offer expert testimony from Dr. Elizabeth Bailey. Dr. Bailey submitted her expert disclosure on May 5, 2026 and was deposed in this matter on May 28, 2026.

Dr. Bailey's opinion is that competition ███████████████████████████ ███████████████████████████ This appears to mean that Dr. Bailey believes █ ███████████████████████████████████████ ███████████████████████████████████. Instead, Dr. Bailey urges the Court to ███████████████████████████ ███████████████████████████████████████ ███████████████████████████. This analytical approach not only distorts a view of ███████████████████████████████████ ███████████████████████████. Dr. Bailey looks largely to ████████████ ███████████████████████████████

Compounding these issues, Dr. Bailey then posits that ███████████████████ ███████████████████████████████████████ ██████████.

To put a finer point on it, imagine that ███████████████████████ ███████████████████████████. Dr. Bailey's proposed methodology would ███████████████████████████████████████ ███████████████████████████. In other words, even though Loctite and Liquid Nails have for many years accounted for well over ██% of the construction adhesives market— most recently accounting for nearly ██%—███████████████████████████ █████████████████ At the same time, a company like ████████████████████

4



[REDACTED].[15] [REDACTED]

[REDACTED].[16] [REDACTED]

[REDACTED][17]

Dr. Bailey's methodology [REDACTED]

[REDACTED]

[REDACTED][18] [REDACTED]. Dr. Bailey [REDACTED]. Dr. Bailey also appears to credit the possibility of [REDACTED]

---

[15] *See* Luppino Expert Report at 94-95, Tables 10 & 11. [REDACTED].

[16] [REDACTED] at 54:21-55:22; Epner Dec. Ex. AA [REDACTED] at 20:18-22:6.

[17] [REDACTED] at 48:25-51:19.

[18] "Sale velocity is basically how -- how many units are running across a cash register within a given period of measured time." [REDACTED] at 79:5-7. *See also* [REDACTED] at 78:3-79:14, 117:10-119:9 (discussing importance of sales velocity). [REDACTED] Epner Dec. Ex. B ("Bailey Dep.") at 168:22-169:10.

5

████████████████████████████████. In short, the Court should exclude Dr. Bailey's

███████████ methodology, which was designed to ████████████████████████████

██████████████████████.

## II.    Legal Standard

Federal Rule of Evidence 702 requires the party offering expert testimony to establish that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "The Second Circuit has distilled Rule 702's requirements into three broad criteria: [i] qualifications; [ii] reliability; and [iii] relevance and assistance to the trier of fact." *Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc.*, 21-cv-4855 (KPF), 2024 WL 522751, at *9 (S.D.N.Y. Feb. 9, 2024) (cleaned up).

Federal Rule of Evidence 703 permits an expert to rely on evidence that is otherwise inadmissible, as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Where inadmissible evidence is relied upon by an expert, however, that expert must still "form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (citation omitted). "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (citation omitted).

This Court has the gatekeeping responsibility to bar conjecture and speculation by proffered expert witnesses whose proposed testimony is not supported by reliable principles or

6

methods. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). Although the *Daubert* analysis may differ in the context of a bench hearing, the Court "still must perform a Rule 702 and *Daubert* analysis before it relies on expert testimony." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2022 WL 2757643, at *3 & *17 (S.D.N.Y. July 14, 2022) (excluding expert testimony pretrial that "will not be helpful" or that is "devoid of any reasoning").

## III.     Argument

**A.     Dr. Bailey's opinion that** ███████████████████████████ **should be excluded because it relies primarily on** ████████████████████████
█████████████████████



The crux of Dr. Bailey's opinion is that ████████████████████████████
███████████████████████████████████████████████████████████
████████████████████. According to Dr. Bailey, ███████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████[19] To this end, she opines that █████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████[20] Dr. Bailey admits that █████████████████████████[21] But her

---

[19] Bailey Dep. at 165:10-166:1.
[20] Bailey Rep. at ¶ 109 n.295.
[21] *Id.*

methodology ████████████████████████████. Moreover, Dr. Bailey was not

aware whether her ████████████████████████████████████.[22] As described

above and below, the evidence roundly demonstrates that ██████████████████

████████. Her opinions ██████████████ offer no probative value to the Court's

assessment of this case.

Making matters worse, ██████████████ methodology, like the one Dr. Bailey

attempts to employ, puts tremendous import on ████████████████████████████

████████████ But Dr. Bailey did not reliably assess sufficient evidence to ████████

██. Instead, she viewed ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████[23] In reference to deposition testimony of █████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████[24] Dr. Bailey wrote that

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████[25] But in support she cites exclusively ████

---

[22] Bailey Dep. at 142:21-143:15.

[23] Bailey Dep. at 176:12-15 (emphasis added).

[24] Bailey Dep. at 152:18-153:8.

[25] Bailey Rep. at ¶ 122 (emphasis added).

███████████████████████████████████████████████████████████

███████████████████████████████ [26] In short, ███████████████████████████

██████████████████████████████████████████████████████████ making her

analysis impossible to test. This opinion should be excluded.

Courts are required to "determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Boucher v. US Suzuki Motor Corp.*, 73 F. 3d 18, 21 (2d Cir. 1996) (citation omitted). "Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable." *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, 95 Civ. 8136 (RCC), 2001 WL 1602976, at *4 (S.D.N.Y. Dec. 14, 2001). "[*A*]*ny* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible.*" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (emphases in original) (citation omitted) (affirming district court exclusion of expert testimony).

Courts in this district have excluded expert opinions that relied on conclusory evidence from litigants rather than objective review of the ordinary course factual record. For example, in *Supply & Building Co.*, an economist's expert opinion on damages was excluded because his assumptions about when the business would resume operations and the speed with which it would sell produce were based on "his client's unrealistic assurances rather than available records," even though "the client's guarantees . . . were contradicted by other data available to" the expert. 2001 WL 1602976, at *4-5; *see also Spectrum Dynamics Med. Ltd. v. GE Healthcare*

---

[26] *See id.* at n.312.

*Techs.,* Inc., 18-cv-11386, 2026 WL 926689, at *7-9 (S.D.N.Y. Apr. 6, 2026); *Argus, Inc. v. Eastman Kodak Co.*, 612 F. Supp. 904, 925-26 (S.D.N.Y. 1985).

Dr. Bailey's ███████████████████████████████████████████████ ████████. In antitrust merger litigation, courts have long recognized the "extremely limited" value of evidence created while a lawsuit was "threatened or pending." *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 504-05 (1974); *see also Alberta Gas Chems. Ltd. v. E.I. Du Pont De Nemours & Co.*, 826 F.2d 1235, 1244 (3d Cir. 1987). To determine whether such evidence lacks probative value, courts ask whether it "*could arguably* be subject to manipulation;" if so, the evidence should be accorded little or no weight. *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 434-35 (5th Cir. 2008) (emphasis in original); *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133, 2014 WL 203966, at *73 (N.D. Cal. Jan. 8, 2014). Courts do not require the government to demonstrate that the evidence was "actually subject to manipulation." *Chicago Bridge*, 534 F.3d at 435. "These cases embody the common-sense proposition that a firm's behavior undertaken with the aim of persuading a court or the government regarding the legality of a merger may not be predictive of how that firm will behave once the court or the government are no longer engaged." *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 80 (D.D.C. 2017); *see also FTC v. Hackensack Meridian Health, Inc.*, No. 20-cv-18140, 2021 WL 4145062, at *23, *27 (D.N.J. Aug. 4, 2021) (giving little weight to evidence created post-complaint that read as though they were prepared "to justify the merger after the fact" because to do anything else "would merely invite future antitrust litigants to create similar documents").

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████ is not an

economic method, it is not based on economic principles, and it is not a testable proposition. Dr. Bailey has not provided any method ███████████████████████████████ ████████████████.[27] It is merely ███████████████████████ which is not the job of an economic expert. Dr. Bailey concedes this: ████████████████████████████ ████████████[28]

To be sure, "[d]ata or information that has been compiled by a client in the ordinary course of business may provide some indicia of reliability for the data." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 52 (S.D.N.Y. 2016) (cleaned up). But here, Dr. Bailey's ██████████████████████████████████████████████████████████ ██████. Rather, it is in direct conflict with the ████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████████████. For example:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[27] Moreover, Dr. Bailey ███████████████████████████████████████████ ██████████████████████████. *See* Bailey Dep. at 174:13-175:9 ███████ ████████████████████████████████████████████

[28] Bailey Dep. at 114:6-9.

[29] *See* Bailey Dep. at 46:2-47:5.

[30] *See* ████████████ at 137:22-138:23.

[31] Epner Dec. Ex. BB ██████████ at 002.

[32] Epner Dec. Ex. CC ██████████ at 001.

11



---

[33] █████████████ at 80:4-12. *See also id.* at 126:21-22, 127:3-19 (███████████████ ████████ ).

[34] *See* Bailey Dep. at 46:2-47:5.

[35] █████████████ at 036.

[36] *See* Bailey Dep. at 46:2-47:5.

[37] Luppino Expert Report at 94, Table 10.

[38] ████████████████████ at 8:9-16.

[39] *Id.* at 23:4-14, 25:4-9.

[40] *See* Bailey Dep. at 46:2-47:5.



---

[41] Epner Dec. Ex. DD ███████████ at 006.

[42] *See* Bailey Dep. at 158:10-15.

[43] Epner Dec. Ex. EE ██████████████████ at 193:22-194:14.

[44] ████████████ at 137:22-138:23.

[45] Epner Dec. Ex. FF ███████████████ at 65:15-17.

[46] Epner Dec. Ex. GG ██████████ at 001.

[47] Luppino Expert Report at 97, Table 12.

[48] *See* Bailey Dep. at 46:2-47:5.

[49] Menards is a major chain of home centers that competes directly with Home Depot and Lowe's. *See* Epner Dec. Ex. HH ██████████████ at 146:6-11. In this context, a ███████ is an individual in charge of purchasing.

[50] ████████████████ at 112:21-113:4.



In sum, as the [REDACTED] testified:



[55]

Accordingly, in addition to failing the *Daubert* standard as expressed in Federal Rule of Evidence 702 for being an unreliable method of analysis, Dr. Bailey's [REDACTED] [REDACTED] roundly contradicted by the record. Dr. Bailey's [REDACTED] [REDACTED] should not be admitted as expert testimony.

---

[51] Luppino Expert Report at 94, Table 10.

[52] *See* Bailey Dep. at 46:2-47:5.

[53] Epner Dec. Ex. II [REDACTED] at 166:16-167:19.

[54] Luppino Expert Report at 94, Table 10.

[55] [REDACTED] at 113:19-114:3.

**B.    Dr. Bailey's opinions ███████ should be excluded because they fail to address the relevant inquiry.**

Dr. Bailey should be prohibited from testifying about █████████████████ ███████████████████ because such testimony requires analysis of ███████████ ███████████████████ but she openly admits that ██████████████████ █████████████████████████████ [56] Because Dr. Bailey does not even attempt to assess the relevant questions necessary ███████████, her opinions must be excluded under Rule 702.

Defendants in a merger case may attempt to defend a transaction by pointing to "expansion" by others who would defeat post-merger attempts to increase price. *FTC v. IQVIA Holdings, Inc.*, 710 F. Supp. 3d 329, 393 (S.D.N.Y. 2024). "The expansion of current competitors is regarded as 'essentially equivalent to new entry,' and is therefore evaluated according to the same criteria." *Id.* (quoting *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 67 (D.D.C. 2018)). Courts have developed concrete standards to assess competitive entry that necessarily inform admissibility standards under Rule 702. Those criteria are "whether entry by other firms would be timely, likely, and sufficient to replace the lost competition." Merger Guidelines § 2.4.C; *see also New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 226 (S.D.N.Y. 2020) (relying on Merger Guidelines' standard for timeliness, likeliness, and sufficiency of market entry).

Dr. Bailey ████████████████████████████████████████████ and thus her opinions on this topic are irrelevant. When an expert's opinion ignores well-established law, it fails two separate prongs of Rule 702. Such opinions are "not helpful to the factfinder,"

---

[56] Bailey Dep. at 44:5-8; *see* Bailey Rep. § 3.4.

*see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2022 WL 15053250, at *23 (E.D.N.Y. Oct. 26, 2022), and are unreliable. *See Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1242-46 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (excluding as unreliable expert testimony that conflicted with prevailing law).

Dr. Bailey's expert report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[57] Indeed, Dr. Bailey appears to believe ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[58] But of course, the same legal standard applies for both entry and expansion. *IQVIA*, 710 F. Supp. 3d at 393 (holding that "expansion of current competitors is regarded as 'essentially equivalent to new entry,' and is therefore evaluated according to the same criteria"). And while Dr. Bailey cannot be faulted for not knowing antitrust law, her failure ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ renders her opinions on the subject fatally unhelpful and unreliable under Rule 702.

## IV.    Conclusion

The Court should exclude, under Rules 702 and 703, Dr. Bailey's opinions that (i)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[57] At trial, the evidence will show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at 122:3-7, 10. ▮▮▮▮▮▮▮▮ at 49:5-51:3; 58:17-59:14; 60:1-8. Regardless, Dr. Bailey's wholesale failure to even consider ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ renders her ultimate opinions inadmissible.

[58] Bailey Dep. at 44:5-9.

██████████████████████████████████████████████

████████████ ; and (ii) that ███████████████████████

Dated: June 8, 2026                Respectfully submitted,

                                   /s/ Justin Epner
                                   Justin Epner (*pro hac vice*)
                                   Federal Trade Commission
                                   600 Pennsylvania Avenue, N.W.
                                   Washington, DC 20580
                                   Phone: 202-326-2942
                                   Email: jepner@ftc.gov

                                   Abby L. Dennis (DC Bar No. 994476) (*pro hac vice*)
                                   Peggy Femenella (DC Bar No. 4727700) (*pro hac vice*)
                                   Nicole Lindquist (DC Bar No. 975593) (*pro hac vice)*
                                   Joseph Alexander Ansaldo (VA Bar No. 75870) (*pro hac vice*)
                                   Maria Cirincione (DC Bar No. 999496) (*pro hac vice*)
                                   Christopher D'Silva (NY Bar No. 6085070) (*pro hac vice*)
                                   Justin Epner (DC Bar No. 1028431) (*pro hac vice*)
                                   Sean Hughto (DC Bar No. 421224) (*pro hac vice*)
                                   Frances Anne Johnson (MD Bar No. 1412170060) (*pro hac vice*)
                                   Sarah Kerman (DC Bar No. 90017957) (*pro hac vice*)
                                   Timothy Singer (DC Bar No. 1048769) (*pro hac vice*)
                                   Edmund Saw (NY Bar No. 5680293) (*pro hac vice*)

                                   *Counsel for Plaintiff Federal Trade Commission*

17

## WORD COUNT CERTIFICATION

Pursuant to Rule 4(B) of the Court's Individual Rules of Practice in Civil Cases, I certify that this computer-generated Memorandum of Law was prepared using Microsoft Windows and Microsoft Word. The total number of words in this Memorandum, exclusive of the caption, table of contents, table of authorities, the signature block, and this certificate of compliance is 5,707, which is in accordance with the maximum 8,750 words as permitted under Local Civil Rule 7.1.

/s/ Justin Epner
Justin Epner

18